**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DEANDRE BRADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-23-NJR** |
| | ) | |
| | ) | |
| **DR. SIDDIQUI[1] and** | ) | |
| **FRANK LAWRENCE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Deandre Bradley filed his Complaint against Dr. Mohammed Siddiqui for deliberate indifference to his serious medical needs. Specifically, Bradley alleges that Dr. Siddiqui denied him mental health treatment from August 21, 2018 to January 1, 2019 and refused to remove a paperclip from Bradley's chest, which Bradley inserted on December 31, 2018 (Doc. 6). Defendant Frank Lawrence was added to the case for purposes of implementing injunctive relief.

This matter is now before the Court on Dr. Siddiqui's motion for summary judgment for Bradley's failure to exhaust his administrative remedies (Docs. 41 and 42). Bradley filed a response (Doc. 44) in opposition to the motion, and Dr. Siddiqui filed a reply brief (Doc. 45). The Court held a hearing on the motion on October 18, 2019.

---

[1] Defendant Siddiqui has identified himself by his proper name, Mohammed Siddiqui (Doc. 41). Accordingly, the Clerk is **DIRECTED** to **CORRECT** Defendant Siddiqui's name on the docket to reflect his proper name.

The issue raised by Dr. Siddiqui is whether Bradley failed to exhaust his administrative remedies prior to filing suit. Bradley filed his Complaint on January 7, 2019 (Doc. 1). He submitted three grievances related to the claims in his Complaint. The first grievance, dated September 17, 2018, complained that Bradley was not being seen by mental health staff (Doc. 42-2, p. 9). Bradley was in segregation at the time, and Bradley complained that he was not being let out of his cell for group therapy and requested that mental health release him from segregation (*Id.* at p. 9). In response to the grievance, Bradley's counselor attached a response from Dr. Goldman, psych administrator, which stated that Bradley was not labeled a seriously mental ill ("SMI") inmate and was not on the mental health caseload (*Id.* at p. 10). The grievance officer also indicated in its response that Bradley was not labeled as SMI until January 2019. (*Id.* at p. 8). The grievance does not mention Dr. Siddiqui, and Dr. Siddiqui did not respond to the grievance. The parties do not dispute that this grievance was fully exhausted, and the Administrative Review Board ("ARB") responded to the grievance on April 24, 2019. (*Id.* at pp. 7-10).

Bradley submitted a second grievance related to his mental health treatment on December 5, 2018 (Doc. 42-2, p. 1). Bradley complained that a "lady" from mental health did not properly document his concerns during a mental health evaluation (*Id.*). Also, correctional staff were present during his evaluation, which was not proper. Bradley complained that he was not receiving proper mental health treatment and that Dr. Goldman stated Bradley was not on the mental health caseload despite Bradley having a mental illness which he identified as suicidal ideation (*Id.* at pp. 1-2). The grievance did not identify Dr. Siddiqui. The grievance was labeled as an emergency, but the Chief Administrative Officer found that an emergency was not substantiated (*Id.* at p. 1). The grievance was submitted to the counselor, who responded on January 22, 2019 (*Id.*). The response included a note from Dr. Levin, the mental health services director, which noted that Bradley was not on the mental health caseload and

had indicated during a January 14, 2019 wellness check that he was not suicidal (*Id*. at p. 3). The ARB has not yet received Bradley's grievance.

On December 31, 2018, Bradley inserted two paperclips into his chest and was seen by healthcare staff the next day. Nurses removed the first paperclip but were unable to remove the second paperclip. Dr. Siddiqui was contacted by the nursing staff, but he refused to send Bradley to an outside hospital to have the paperclip removed (Doc. 1, p. 5). Bradley wrote an emergency grievance about Dr. Siddiqui on January 1, 2019 (Doc. 42-2, p. 15). The grievance was received by the Chief Administrative Officer on January 3, 2019 (*Id*.). The CAO deemed the grievance an emergency. It is not clear from the records submitted when the grievance officer reviewed the grievance, but the grievance is stamped as being received by the ARB on April 8, 2019 (*Id*.). Bradley indicates in his response that he did not receive the grievance back from the grievance officer until March 29, 2019 (Doc. 44, p. 5).

Bradley's Complaint was written on January 1, 2019 (Doc. 1, p. 7). It was filed on January 7, 2019, along with a motion for temporary restraining order requesting that Bradley be sent to an outside hospital to have the paperclip removed (Doc. 2). Bradley indicated in the motion that the grievance process was lengthy and that he was in need of immediate medical care because his lung may have been pierced by the paperclip (Doc. 2, p. 2). Bradley similarly argues in his response that his life was in imminent danger and that the grievance process would not be able to remedy his life-threatening condition in a timely fashion (Doc. 44, pp. 4-5). He argues there was no immediate remedy other than a preliminary injunction (*Id*. at p. 6). He points to the fact that his grievance was not returned to him until March 29, 2019 as evidence that the grievance process was unavailable for this emergency condition.

## Legal Standards

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a

matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Bradley cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the

judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections ("IDOC"), Bradley was required to follow the regulations contained in the IDOC Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the

problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process. 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

**ANALYSIS**

Bradley brings two claims against Dr. Siddiqui: (1) that he was deliberately indifferent in denying him mental health treatment from August 21, 2018 to January 1, 2019 (Count 1) and (2) that he was deliberately indifferent in refusing to remove the second paperclip in Bradley's chest (Count

2). It is undisputed that Bradley failed to exhaust any of his three grievances prior to filing suit. Bradley argues, however, that he was in imminent danger and could not properly exhaust his administrative remedies.

## A. Mental Health Treatment

As to Bradley's claim that Dr. Siddiqui was deliberately indifferent to his mental health treatment, the Court finds that Bradley failed to exhaust his administrative remedies. Bradley filed two grievances regarding his mental health treatment, one dated September 17, 2018, and the other dated December 5, 2018. Neither grievance mentions Dr. Siddiqui. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate must, as the very least, "include as much descriptive information about the individual as possible." 20 Ill. Admin. Code §504.810(a)(b). *See also Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013); *but see Jackson v. Shepherd*, 552 F. App'x 591, 593 n.1 (7th Cir. 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits with the purpose of the PLRA exhaustion requirement which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006) (*citing Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)).

Here, Bradley's grievances neither identify Dr. Siddiqui nor address any actions taken by Dr. Siddiqui. Both grievances discuss mental health treatment and the actions of the mental health staff. The grievances were responded to by mental health staff, including Dr. Goldman and Dr. Levin. Dr. Siddiqui, on the other hand, is the medical director over medical care at the prison. Nothing in the grievance puts the prison on notice that Bradley had complaints about Dr. Siddiqui in relation to Bradley's mental health treatment. Thus, the grievances do not serve to exhaust his claims against Dr. Siddiqui.

## B. Medical Treatment

As to Dr. Siddiqui's treatment and removal of the paperclips that Bradley inserted into his abdomen/chest, Bradley filed an emergency grievance on January 1, 2019. He admits that he did not wait for a response to the grievance and, instead, submitted his Complaint to the law library to be filed on January 4, 2019. It was filed on January 7, 2019. He argues that he did not have to exhaust his administrative remedies because he was in imminent danger. He testified at the evidentiary hearing that he felt he was in imminent danger beginning January 1 until the time that the paperclip was removed in May 2019. He also testified that a piece of the paperclip broke off while he turned in bed on January 3, 2019, further placing him in imminent danger. He acknowledged, however, that he was seen by medical staff on January 2, 2019 and January 3, 2019 and that the nurse practitioner offered to remove the paperclip on January 2 but he refused treatment.

Exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted**.** *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A prisoner must wait to bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)). An emergency does not exempt an inmate from exhausting his administrative remedies. The Seventh Circuit has recognized, however, that under very limited circumstances, an inmate's need for a remedy may be so dire that an administrative process could not sufficiently address the need in a timely matter, thus making the process unavailable. *Fletcher v. Menard Correctional Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010). While there is no "imminent danger" exception to exhaustion like there is for excusal of a filing fee nor is "futility" an excuse, the Seventh Circuit has stated that imminent danger can create a situation where "there are no administrative remedies for warding off such a danger." *Fletcher*, 623 F.3d at 1173. Thus, an administrative remedy is deemed unavailable when an inmate is placed in imminent danger of serious physical injury and the available administrative remedies will not afford him the relief he seeks before the injury will occur. *Fletcher*, 623 F.3d at 1173; *Kincaid v. Sangamon*

*County*, 435 F. App'x 533, 537 (7th Cir. 2011) (the plaintiff may have demonstrated that remedies were unavailable when he faced the medical emergency of a gangrenous gallbladder and had been requesting treatment for five days). In *Fletcher*, the Court ultimately found that IDOC has an emergency grievance process which could deal with the plaintiff's urgent medical needs. *Fletcher*, 623 F.3d at 1175 (inmate had an available remedy through the emergency grievance process and had to "wait more than two days to test its availability before he could sue")

The Court finds that Bradley's particular circumstances do not fall under the narrow exception created by the Seventh Circuit in *Fletcher*. Like the inmate in *Fletcher*, Bradley had an emergency grievance process available to him, which he started but did not complete prior to filing suit. Bradley submitted an emergency grievance on January 1, 2019, and the CAO deemed the grievance an emergency on January 3, 2019, but Bradley did not wait for a response to the grievance office nor did he submit it to the ARB prior to filing suit. In fact, the ARB did not receive his grievance until April 8, 2019, nearly three months after he had already filed suit.

Further, Bradley's medical condition does not appear to be one that put him in imminent danger. Bradley saw a nurse practitioner on January 2, 2019; she offered to remove the paper clip, but Bradley refused. Thus, Bradley had medical care available to him and he refused the care. There is also no evidence that he faced a medical emergency that needed immediate treatment. *See Kincaid*, 435 F. App'x at 536-7 (inmate's physical impediment and need for immediate care could make the grievance process unavailable). Although Bradley testified that a piece of the paperclip broke off on January 3, 2019, there is no evidence that he suffered any physical impediment as a result or that he needed emergency surgery. He received additional x-rays on January 3, which showed that a piece of the paperclip was still inside of him but there is nothing in the record to suggest that it was near a vital organ, as Bradley feared, or that he required emergency care (Doc. 44, pp. 2 and 6). He acknowledges that the paperclip was not removed until May 2019, which further demonstrates that he did not face any imminent danger.

Bradley also testified that he did not wait for a response to his emergency grievance because he had already spoken to the healthcare staff and knew what their response would be. Bradley testified that he knew the grievance officer would get his or her information from the same doctors with whom Bradley had already spoken and, thus, he decided not to wait for the response. But an inmate is required to exhaust his administrative remedies *regardless* of whether he believes the attempt will be futile. *Dole*, 438 F.3d at 809. Although Bradley submitted an emergency grievance, he admittedly did not wait for a response before filing his Complaint. In fact, he waited a mere *four days* before submitting his Complaint for filing. Bradley did not even wait long enough to determine if the grievance process was unavailable to him. *See Fletcher*, 623 F.3d at 1175 (inmate had to wait more than two days to test the availability of the grievance process). In fact, the process was available, because the CAO deemed the grievance an emergency on January 3, 2019 and submitted it to the grievance office for a response (Doc. 42-2, p. 15). Because Bradley failed to wait for that response and instead filed suit immediately, he failed to exhaust his administrative remedies prior to filing suit.

### CONCLUSION

For the reasons stated above, Dr. Siddiqui's motion for summary judgment (Docs. 41 and 42) is **GRANTED**, and the claims against Dr. Siddiqui are **DISMISSED without prejudice**. As Frank Lawrence is in the case only for the purpose of implementing any injunctive relief awarded to Bradley, Frank Lawrence is also **DISMISSED without prejudice**.

The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: 10/21/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**